UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STARBUCKS CORPORATION, a
Washington corporation; and STARBUCKS
U.S. BRANDS CORPORATION, a California
corporation,

        Plaintiffs,

    v.

SAMANTHA LUNDBERG, an individual dba
SAMBUCKS COFFEE,

        Defendants.

Civil No.  02-948-HA

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

---

Elizabeth Schwartz
Perkins Coie, LLP
1120 N.W. Couch Street, 10th Floor
Portland, Oregon 97209

John C. Rawls
Fulbright & Jaworski, LLP
555 South Flower Street, 41st Floor
Los Angeles, California 90071
      Attorneys for Plaintiffs

Kurt M. Rylander
Rylander & Associates PC
406 West 12th Street
Vancouver, Washington 98660
      Attorneys for Defendants.

HAGGERTY, Chief Judge:

This Court, upon review of the pleadings, submissions by all parties, sworn testimony of witnesses and other evidence introduced by the parties, makes the following findings of fact and conclusions of law:

## THE PARTIES

1.

Plaintiff Starbucks Corporation (Starbucks) is a corporation organized and existing under the laws of the State of Washington, with its principal place of business located in Seattle, Washington. Since 1971, it has done business under the trade names "Starbucks," "Starbucks Coffee Company" and "Starbucks Coffee."

2.

Plaintiff Starbucks U.S. Brands L.L.C. (U.S. Brands) is a limited liability company organized under the laws of the State of Nevada, with its principal place of business located in Minden, Nevada. U.S. Brands is an indirectly held subsidiary of Starbucks Corporation.

3.

U.S. Brands is the owner of at least 60 valid United States trademark registrations comprising of or incorporating the mark "Starbucks," including but not limited to Registration Nos. 1,372,630; 1,444,549; 1,452,359; 2,073,104; 2,086,615; 2,091,940; 2,176,974; 2,176,977; 2,178,663; 2,180,757; 2,180,760; 2,180,761; 2,189,460; 2,236,553; 2,696,594; 2,039,849; 2,024,105; 2,102,737; 2,047,491; 2,104,933; 2,236,554; 2,178,662; 2,178,664; 2,178,665; 2,189,461; 2,228,587; 2,184,259; 2,227,836; 2,227,837; 2,227,835; 2,035,005; 2,177,000; 2,475,540; 2,282,913; 1,417,602; 1,542,775; 1,815,937; 1,815,938;

1,891,561; 1,893,602; 1,943,361; 2,028,943; 2,030,878; 2,091,941; 2,120,653; 2,176,975; 2,176,976; 2,180,758; 2,180,759; 2,266,351; 2,266,352; 2,277,174; 2,325,182; 1,098,925; 2,553,708; 2,696,192; 2,227,639; 1,758,589; 1,821,547; and 2,839,122.

4.

Starbucks Corporation is a licensee of all of the foregoing trademarks.

5.

Defendant Samantha Lundberg is an individual residing and doing business in the State of Oregon. Lundberg owns and operates a business under the name "Sambuck's Coffeehouse," which sells coffee and coffee related products.

## FINDINGS OF FACT

A.     **Starbucks and Its Marks**.

6.

Over the past thirty-four years, Starbucks has expanded to over 9,800 retail locations in the United States, Canada and thirty-three foreign countries and territories. Starbucks also supplies premium, fresh roasted coffee to restaurants and other accounts throughout the world. Starbucks' revenues for fiscal year 2004 were $5.3 billion, a substantial increase over fiscal 2003 revenues of $4.1 billion. Starbucks is the largest and best-known purveyor of specialty coffees and coffee products in North America.

7.

Since 1971, Starbucks has used the "Starbucks" trademark to identify its goods and services. For thirty-four years, Starbucks has used the Starbucks® mark both to identify its goods and services and as the name of the company. The Starbucks® mark is the subject of

more than sixty trademark registrations issued by the United States Patent and Trademark Office, and has been registered in more than 130 foreign countries.

8.

The Starbucks® mark is a valid trademark and became a valid trademark before Lundberg began using the term "Sambuck's" as the name of her coffeehouse.

9.

The Starbucks® mark is famous and became famous before Lundberg began using the term "Sambuck's" as the name of her coffeehouse.

10.

The Starbucks® mark is "distinctive" within the meaning of the Oregon Revised Statutes Section 647.107.

11.

The Starbucks® mark became "distinctive" within the meaning of the Oregon Revised Statutes Section 647.107, before Lundberg began using the term "Sambuck's" as the name of her coffeehouse.

12.

Starbucks' growth and achievements in recent years is well known. Hundreds of articles have been written about the company, adding to widespread awareness of Starbucks and its products among consumers.

///

///

13.

Starbucks has spent substantial time, effort and money advertising and promoting

the Starbucks® mark throughout the United States and elsewhere:

- Starbucks owns, or operates through affiliates and licensees, more than
  6,900 retail stores in the United States and Canada, under the trade names "Starbucks
  Coffee Company" and "Starbucks Coffee." More than 30 million customers visit
  Starbucks' United States stores each week. In addition there are currently over 2,800
  Starbucks retail stores located in thirty-three foreign countries. Each store
  prominently displays the Starbucks® mark on exterior signage and at multiple
  locations within the store;

- Starbucks distributes several exclusive coffee blends, Starbucks® brand ice
  cream, bottled Frappuccino® and Starbucks Doubleshot® coffee drinks to grocery
  stores and similar retailers nationwide. Each product prominently bears the
  Starbucks® mark;

- Starbucks has licensed Host Marriott Services Corporation to operate
  more than 200 coffee kiosks ("Starbucks Kiosks") in major airports in the United
  States and Canada. The Starbucks Kiosks sell Starbucks® brand coffees and other
  beverages prepared on site in accordance with strict beverage preparation and quality
  control procedures established by Starbucks, which are intended to maintain the high
  and consistent standards imposed by Starbucks on its own stores. The Starbucks
  Kiosks utilize the Starbucks® mark in a manner similar to that employed in
  Starbucks-owned retail outlets;

- Starbucks coffees are served from dedicated retail areas located in over
  620 Barnes & Noble Bookstores (B&N Cafes). B&N Cafes serve Starbucks® brand
  coffee and espresso beverages brewed on site in accordance with procedures
  established by Starbucks, and prominently display the Starbucks® mark;

- Starbucks has entered into similar license agreements with major
  supermarket franchises, such as Safeway, Fred Meyer, Fry's, Bi-Lo, ACME,
  Dominick's, Tom Thumb, Mollie Stone, Super Target and Albertsons, through
  which Starbucks locations are operated within the supermarkets. These locations
  prominently display the Starbucks® mark.

///

///

14.

Starbucks sells its coffee to restaurants, airlines, sport and entertainment venues, motion picture theaters, hotels and cruise ship lines.

15.

Starbucks operates an Internet Web site that generates over 400,000 "hits" from visitors per week. The Starbucks® mark is incorporated into many of the individual "pages" within this site and is displayed on much of the branded merchandise offered for sale on-line.

16.

From the fiscal years 2000 to 2004, Starbucks spent over $200 million on advertising, promotion and related marketing activities in retail North America. These activities have included television and radio commercials, print advertising and in-store displays. Virtually all of Starbucks' advertising prominently features (or, in the case of radio, mentions) the Starbucks® mark, which Starbucks considers to be critical to the maintenance of its positive public image and identity.

17.

Starbucks products or retail stores have been featured prominently in a number of popular motion pictures and television shows. For example, the films Miss Congeniality, Best in Show, Kate & Leopold, Zoolander, I Am Sam, Austin Powers 2 - The Spy Who Shagged Me, Austin Powers in Goldmember, The Muse, Bowfinger, You've Got Mail, Michael, Josie and the Pussycats, 13 Going on 30, In Good Company, Shrek 2, Hitch, Meet the Fockers, The Terminal, the 1999 Grammy Awards, the 1999 Sundance Film Festival and

the television shows The Sopranos, The Oprah Winfrey Show, The Rosie O'Donnell Show, The Late Show, The Tonight Show, Boston Public, Ally McBeal, Six Feet Under, The West Wing, Jeopardy!, and Strong Medicine, which have been seen by millions of viewers in theaters or on television or video, each have contained scenes in which the Starbucks® mark is prominently displayed.

### B.    The Starbucks® Mark is Held In High Regard.

18.

Starbucks' success is predicated on the consistent high quality of its fresh roasted specialty coffees, brewed coffee and espresso beverages and the other products and services it provides, which are associated by consumers with the Starbucks® name and trademarks. Starbucks has a reputation for excellence, particularly in the area of roasted coffees and brewed coffee beverages, and is recognized for its knowledgeable staff and service.

19.

The Starbucks® mark is held in high regard by consumers. The broad and positive recognition that the Starbucks® mark enjoys is a result of: (a) the wide dissemination that the Starbucks® mark and related trademarks receive; (b) Starbucks' substantial investment of time, effort and money in the selection and roasting of the highest quality coffees available; (c) thorough training provided to Starbucks' employees; and (d) Starbucks' substantial investment of time, effort and money in the promotion of its products.

20.

Starbucks positions itself and its products in the marketplace as "premium" or "best of class," which appeals to consumers for whom quality is among the most important

aspects of a purchase decision. Consumers who would consider buying Starbucks®

products rely to a large degree upon the company's reputation in deciding whether its

products are good enough to meet their quality standards.

21.

Starbucks considers maintenance of its premium image to be particularly important

in light of the development of the coffee and beverage market over the last several

years. Starbucks faces competition from many highly regarded companies, including The

Coffee Bean & Tea Leaf, Peete's Coffee and numerous smaller, regional competitors, each

of which targets coffee drinkers who are brand conscious and who are willing to pay more

for a product with a premium reputation. Any use of variations on the Starbucks® mark on

products that are not of the same premium reputation as Starbucks' products could decrease

Starbucks' reputation and impair Starbucks' ability to compete in the premium coffee and

beverage marketplace.

22.

Starbucks has widely advertised and used the Starbucks® mark to identify its

goods and services. By virtue of such advertising and use, the Starbucks® mark has come

to

identify Starbucks as the source of goods and services marketed under the Starbucks® mark.

This mark has come to represent valuable goodwill. Interbrand, a leading international

branding consulting firm, has identified "Starbucks" as one of the most valuable brands in

the world for the last four years.

///

*///*

**C.     Lundberg and Her Use of the "Sambuck's" Mark.**

23.

In October 2000, Lundberg acquired a coffee shop in Astoria, Oregon that had been operated under the name "Astoria Coffeehouse."

24.

In 2001, Lundberg changed the name of her coffee shop to "Sambuck's Coffeehouse."

25.

Lundberg was aware of Starbucks and had visited a Starbucks retail store prior to changing the name of her store to "Sambuck's."  At the time, Lundberg knew that Starbucks® was one of the best known trademarks in America, and that it was closely associated by the public with coffee and with stores that serve coffee.

26.

Starbucks opened its first retail store in Portland, Oregon on August 28, 1989. Starbucks® products were first offered for sale in Oregon grocery stores in 1996.

27.

Currently, there are more than 230 Starbucks retail locations in Oregon, one of which is less than two miles from Sambuck's Coffeehouse.

28.

As of January 2001, the Starbucks® mark was widely disseminated and well known

in Oregon and throughout the world: (a) there were more than 3,500 Starbucks stores in the world; (b) Starbucks' revenues in fiscal year 2000 were $2.2 billion; ©) there were more than 100 Starbucks Kiosks in major airports in the United States and Canada; (d) there were more than 480 B&N Cafes nationwide; and (e) there were more than 100 Starbucks retail locations in Oregon.

29.

Defendant's name is Samantha Lundberg and has been Samantha Lundberg since 1993. Defendant's name is not "Buck" or "Sam Buck" or "Sambuck." Defendant signs the name "Lundberg" on all of her relevant documents, including her driver's license, income tax returns, the title to the deed to her home, her checks, the lease for the business location of her shop, contracts, a business name application to the Oregon Secretary of State and her Oregon State Trademark and Service Mark Registration.

30.

Starbucks' use of the Starbucks® mark, which began in 1971, predates Lundberg's use of the term "Sambuck's," which began no earlier than 2001.

31.

The Starbucks® mark became valid, famous and distinctive before Lundberg began using the term "Sambuck's" as the name of her coffeehouse.

32.

Before Lundberg began using the term "Sambuck's" as the name of her coffeehouse, Lundberg was aware of Starbucks and the Starbucks® mark. Lundberg intentionally adopted the "Sambuck's" name. By using the name "Sambuck's," Lundberg sought to trade

off of the goodwill and premium reputation that the Starbucks® mark had developed.

33.

Before Lundberg began using the term "Sambuck's" as the name of her coffeehouse, Lundberg was also aware that her use of the term "Sambuck's" might cause consumers to believe that Lundberg's coffee shop was affiliated with Starbucks.

**D.      Starbucks' Efforts to Terminate Lundberg's Use of the "Sambuck's" Mark.**

34.

On March 4, 2002, Starbucks' counsel wrote to Lundberg, explaining that her new business name infringed and diluted Starbucks' most valuable trademark, and requesting that she change the name of her establishment.

35.

Lundberg and Starbucks' counsel engaged in extensive negotiations over a period of several months.

36.

Lundberg continued to use the name "Sambuck's" with knowledge that Starbucks claimed such actions infringed and diluted the Starbucks® mark.

37.

From 2001 to the present, Lundberg has continued to use the "Sambuck's" mark on exterior signage at the coffeehouse, on the store's paper cups, on the store's business cards, on key chains, on coffee travel mugs, on advertisements and in the media.

*///*

*///*

### E. Consumer Association of "Sambuck's" With Starbucks.

38.

Consumers associate "Sambuck's" with Starbucks due to the great similarity between the marks.

39.

Eighty-five percent of consumers who encountered the "Sambuck's Coffeehouse" name immediately thought of "Starbucks" (as compared to only forty-three percent of consumers who encounter the control name "Sammy's Coffeehouse").

40.

More than seventy percent of consumers who encountered the "Sambuck's Coffeehouse" name think of Starbucks because of the high degree of similarity between "Sambuck's" and "Starbucks."

41.

No consumer who encountered the "Sammy's Coffeehouse" name thought of "Starbucks" because of the similarities between the marks.

42.

The sight and sound of the name "Sambuck's" causes consumers to think of Starbucks.

43.

If a brand loses its distinctiveness by being associated in consumers' minds with

more than one company's products and services, the original associations of the brand become literally diluted, which negatively affects the brand's marketplace performance.

44.

Consumers' perception that Sambuck's Coffeehouse offers poor quality products, or even products that are good but not of the same premium reputation as Starbucks' products, would damage the reputation and favorable associations that the Starbucks® brand currently enjoys.

45.

While the current harm to the Starbucks® brand is limited, if the Sambuck's Coffeehouse is licensed, franchised, marketed or used by additional stores, the dilution of the Starbucks® mark and its distinctiveness and uniqueness could be substantial.

46.

The likelihood that the Sambuck's brand associations will affect and dilute the brand associations of Starbucks is particularly pronounced.

**F.      Defendant's Use of "Sambuck's" Infringes and Dilutes the Starbucks® Mark.**

47.

"Sambuck's" and "Sambuck's Coffeehouse" are colorable imitations of the Starbucks® and Starbucks Coffee® marks.

48.

Lundberg's use of the term "Sambuck's" is likely to cause confusion, to deceive and/or to cause mistake among an appreciable number of ordinarily prudent consumers as to the affiliation, connection or association of  "Sambuck's" products with Starbucks, or as to

the origin, sponsorship or approval of Lundberg's goods, services or commercial activities

by Starbucks.  Lundberg's actions further misrepresent the nature, characteristics or qualities

of Lundberg's goods, services or commercial activities.

49.

Lundberg's use of the "Sambuck's" mark creates initial interest confusion.

50.

The term "Sambuck's" is similar to the Starbucks ® mark.

51.

Lundberg and Starbucks both sell coffee and related products.

52.

Lundberg and Starbucks sell through the same marketing channels.

53.

The Starbucks® mark is strong.

54.

Lundberg's nearly verbatim copying of Starbucks' fanciful trademark

demonstrates Lundberg's intent to mislead consumers and trade off of Starbucks'

strong reputation and goodwill.

55.

The coffee products offered by Lundberg and by Starbucks are relatively

inexpensive.

///

///

56.

Lundberg's commercial use of the "Sambuck's" mark is likely to cause dilution of the distinctive quality of the Starbucks® mark, and lessen the capacity of the famous Starbucks® mark to identify and distinguish Starbucks' goods and services.

57.

Lundberg's use of the "Sambuck's" mark to identify its goods and services threatens to reduce and does reduce the ability of the Starbucks® mark to serve as a unique identifier of Starbucks' products and services.

58.

Starbucks has a reputation for excellence, particularly in the area of roasted coffees and brewed coffee beverages, and is recognized for its knowledgeable staff and service. Starbucks invests substantial time, effort and money into the selection and roasting of the highest quality coffees available, in addition to the thorough training provided to Starbucks' employees. Lundberg's products and services are not subject to the same quality control standards applied to Starbucks' products and services.

59.

Lundberg's use of the "Sambuck's" mark threatens to reduce the ability of the Starbucks® mark to serve as a identifier of premium Starbucks® products and services. The public is likely to associate the lack of quality and lack of prestige represented by the "Sambuck's" name with Starbucks' goods and services. The Starbucks® mark is likely to suffer negative associations through Lundberg's use of the "Sambuck's" name.

# CONCLUSIONS OF LAW

**A.      Jurisdiction and Venue Are Proper.**

60.

This court has jurisdiction of the federal claims asserted in this action pursuant to

28 U.S.C. §§ 1331 and 1338(a) as an action arising under the Lanham Act, 15 U.S.C. §§

1051 *et. seq.*; as well as 28 U.S.C. §§ 1332(a) as an action between citizens of different

states where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs.  This court has jurisdiction of Starbucks' state claims based upon the

principles of supplemental jurisdiction set forth in 28 U.S.C. § 1367, and the provisions of

28 U.S.C. § 1338(b).

**B.      Lundberg's Use of the "Sambuck's" Name Is Likely to Dilute Starbucks'
          Trademarks In Violation of ORS 647.107.**

61.

Section 647.107 of the Oregon Revised Statutes provides in part as follows:

> Likelihood of injury to business reputation or of dilution of the distinctive
> quality of . . . a mark valid at common law, shall be a ground for injunctive
> relief notwithstanding the absence of competition between the parties or
> the absence of confusion as to the source of goods or services.

To prevail on a dilution claim under Oregon law, Starbucks need establish only that: (1) it

owns a "distinctive" mark; and (2) Lundberg's use of the "Sambuck's" name creates a

likelihood that the Starbucks® mark will be diluted.  Starbucks has met its burden with

respect to both elements.  It is beyond dispute that the Starbucks® mark is distinctive.

Oregon's dilution statute is broader than the federal law in that it requires only a showing

that dilution is "likely," not that "actual" dilution has occurred.  ORS 647.107; *Moseley v. V*

*Secret Catalogue, Inc.*, 537 U.S. 418, 432-433 (2003).  Starbucks met this burden with

substantial and unrebutted expert testimony and survey evidence demonstrating that

Lundberg's use of the variant name "Sambuck's" likely dilutes, and will continue to dilute,

the Starbucks® mark.

### 1.    The Starbucks® Mark is Distinctive.

62.

The Starbucks® trademark is presumed to be distinctive and is distinctive.  First,

because the Starbucks® mark is the subject of more than sixty trademark registrations

issued by the United States Patent and Trademark Office, it is presumed to be distinctive.

*See Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

Second, "fanciful" trademarks "receive automatic protection because of their inherent

distinctiveness."  *Interstellar Starship Services, Ltd. v. EPIX, Inc.*, 304 F.3d 936, 943 n.6

(9th Cir. 2002); *Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 355 (9th Cir. 1948) ("coined

or fanciful marks or names should be given a much broader degree of protection than words

in common use").  The Starbucks® mark is fanciful because it is not descriptive, or even

suggestive, of the services provided by the plaintiffs.

63.

A trademark may develop distinctiveness "in a variety of ways: long use, consistent

superior quality instilling consumer satisfaction, [or] extensive advertising."  *Wedgwood

Homes, Inc. v. Lund,* 294 Or. 493, 498 (1983); *Interstellar Starship*, 304 F.3d at 947.  This is

commonly referred to as "secondary meaning."  The Starbucks® mark has acquired

substantial secondary meaning.  Starbucks has used the Starbucks® mark for more than

thirty-four years.  Evidence supporting this conclusion includes the following: the

Starbucks® mark has been extensively advertised; Starbucks spent more than $200 million

from 2000 to 2004 to promote its brand identity; the mark is used as the name of more than

9,300 stores in the United States and thirty-four foreign countries, and it has been rated as

one of the most valuable brands in the world for the past four years.

> **2.      Lundberg's Use of the "Sambuck's" Name Causes a Likelihood of Dilution Both By Blurring and By Tarnishment.**

64.

Oregon's dilution statute requires only that a plaintiff prove a "likelihood" of

dilution.  *See* ORS 647.107.  This burden is met by evidence that the defendant used a

variant mark that "has created some mental association between the protected mark and the

alleged diluter."  *Fruit of the Loom, Inc., v. Girouard*, 994 F.2d 1359 (9th Cir. 1993).

Starbucks presented expert testimony and survey evidence demonstrating that an

overwhelming number of consumers have exactly this reaction when they encounter the

"Sambuck's Coffeehouse" name.

65.

Dilution can occur in two distinct manners: by "blurring" or "tarnishment."

Dilution by "blurring" occurs when the defendant's use of a variant of the plaintiff's mark

creates "at least some subliminal connection in a buyer's mind between the two parties' use

of their marks."  *Saks & Co. v. Hill*, 843 F. Supp. 620, 624 (S.D. Cal. 1993).  Blurring is

actionable even before the defendant's use becomes widespread and before the mark suffers

significant injury.

66.

"Tarnishment" of a trademark occurs when the defendant creates an association in the minds of consumers that is inconsistent with the pre-existing reputation of the plaintiff's mark.

67.

Professor Simonson's testimony and survey provided direct evidence that Lundberg's use of the name "Sambuck's" creates a likelihood of both types of dilution. Professor Simonson's consumer survey establishes, among other things, that: (1) Eighty-five percent of respondents shown the "Sambuck's Coffeehouse" name immediately thought of "Starbucks" (twice the percentage of persons who were shown the placebo name, "Sammy's Coffeehouse"); (2) over seventy percent of respondents who were shown the "Sambuck's Coffeehouse" name indicated that the name brought Starbucks to mind because of the high degree of similarity between the two terms; and (3) no respondent who saw only the "Sammy's Coffeehouse" name indicated that they thought of "Starbucks" because of similarities between the marks.

68.

Professor Simonson's testimony established the likelihood that the Sambuck's brand associations would affect and dilute the brand associations of Starbucks. Professor Simonson's testimony also established that consumers' association of the Sambuck's mark with Starbuck's mark would eventually diminish the distinctiveness of the Starbuck's mark.

69.

Professor Simonson's opinion is supported by other evidence, including: the similarities between the "Sambuck's" and "Starbucks" names; the directly competitive nature of the parties' businesses; the lack of any evidence that Lundberg's store or products have developed the same premium reputation that the Starbucks® brand currently enjoys; and the fact that Lundberg could open additional Sambuck's Coffeehouse locations (or license other competitors of Starbucks to do so).

70.

Lundberg's use of the "Sambuck's" mark is likely to dilute the distinctive quality of the Starbucks® mark pursuant to Oregon Revised Statutes Section 647.107.

**C.    Lundberg's Use of the "Sambuck's" Name Infringes Starbucks' Registered Trademarks in Violation of 15 U.S.C. § 1114(1).**

71.

Section 32 of the Lanham Act prohibits a defendant from using in commerce "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" in a manner that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prevail on such a trademark infringement claim, Starbucks must prove, by a preponderance of the evidence, that: (1) Starbucks owns a protectable trademark; and (2) Lundberg's use of the "Sambuck's" name creates a likelihood of consumer confusion. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

///

72.

Starbucks owns more than sixty United States trademark registrations comprising or

incorporating the Starbucks® mark. "Federal registrations constitute prima facie evidence of the validity of the respective marks, plaintiff's ownership of them, and plaintiff's exclusive right to use the marks in the United States." *Nailtiques Cosmetic Corp. v. Salon Sciences Corp.*, 41 U.S.P.Q.2d 1995, 1997 (S.D. Fla. 1997); 15 U.S.C. §§ 1057(b), 1115(a). It is also undisputed that Starbucks did not, and does not, consent to Lundberg's use of the "Sambuck's" mark.

73.

The quality and quantity of consumer confusion necessary to establish trademark infringement is minimal:

- Not all, or even a majority of, consumers need to experience a likelihood of confusion; if any "appreciable number" of consumers are likely to form an incorrect belief, infringement has occurred.

- The trademark owner need not prove that consumers are likely to believe the infringer's goods originate from the trademark owner; trademark law precludes a defendant from misleading consumers about virtually any aspect of its business.

- Likelihood of confusion exists even if the consumer's misunderstanding is brief and even if it is alleviated before the consumer makes a purchase; "initial interest" confusion is actionable.

- The plaintiff need not show "actual" consumer confusion; a "likelihood" of confusion establishes infringement.

The evidence presented by Starbucks is sufficient to meet its burden of proving that Lundberg's use of the "Sambuck's" mark infringes Starbucks' registered trademarks.

///

**1.      Infringement Requires That Only an Appreciable Number of Consumers Are Likely To Be Confused.**

74.

Lundberg's use of the "Sambuck's" mark need not be likely to confuse a majority of consumers. Rather, the defendant's mark need only create a likelihood that an "appreciable number" of ordinary consumers would be confused. *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1151 (9th Cir. 2002). The percentage of consumers likely to be confused can be in the range of 10 to 15 percent or even lower.

**2.    Consumer Confusion Can Be as To Affiliation or Association.**

75.

The likelihood of confusion that gives rise to trademark infringement liability need not involve the source or origin of the goods at issue. Rather, the "appropriate inquiry is whether the average purchaser would be likely to believe that the infringer's product has 'some connection' with the trademark owner." *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986). Likelihood of confusion is established "when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001).

**3.    "Initial Interest" Confusion Is Actionable.**

76.

A likelihood of confusion need not exist at the time a consumer makes a purchase decision. Infringement occurs even if the likelihood of confusion terminates before a sale is made by the defendant. "Initial interest" confusion occurs when the defendant uses the mark in a manner that is likely "to capture initial consumer attention, even though no actual

sale is finally completed as a result of the confusion." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997).

77.

Lundberg's use of the "Sambuck's" mark creates initial interest confusion. Thus, Lundberg has committed trademark infringement even if, as she claims, consumers who make purchases at her store have "no reason to believe that [it is] related to, or in any way sponsored by," Starbucks when they finally make a purchase.

### 4. Every Relevant *Sleekcraft* Factor Favors a Finding of Infringement.

78.

The Ninth Circuit has identified eight factors that are relevant in determining whether a likelihood of confusion exists in a trademark infringement action: (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channels used; (4) the strength of plaintiff's marks; (5) defendant's intent in selecting its marks; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by the purchasers. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Applying *Sleekcraft* to the evidence that was presented to the court establishes a likelihood of confusion between "Sambuck's" and "Starbucks."

///

///

### a. "Starbucks" and "Sambuck's" are similar marks.

79.

The similarity of the marks is a "critical question" in analyzing the likelihood of confusion. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir 2000). The greater the similarity between the two marks, the greater the likelihood of confusion. *Id.*, at 1206. "Similarity of the marks is tested on three levels: sight, sound and meaning." *Sleekcraft*, 599 F. 2d at 351. When the products offered under the marks are closely related, as here, an even lesser degree of similarity is required to support a finding of infringement. *BellSouth Adv. & Pub. Co. v. Real Color Pages, Inc.*, 792 F. Supp. 779, 781 (M.D. Fla. 1991).

80.

The similarities between "Sambuck's" and "Starbucks" are extensive and obvious. Both Sambuck's and Starbucks® consist of one word. Both have two syllables. Both begin with the letter and sound "S" and end with "bucks." Both are pronounced with the first syllable accented.

81.

Moreover, consumers perceive "Sambuck's" and "Starbucks" to be similar marks. Professor Simonson's survey establishes: over seventy percent of respondents shown the "Sambuck's Coffeehouse" name indicated that the name brought Starbucks to mind because of the high degree of similarity between the two terms. By contrast, none of the respondents who were shown the "Sammy's Coffeehouse" name indicated that they perceived that mark to be similar to "Starbucks."

        **b.**        **Starbucks and Sambuck's sell competitive goods.**

82.

Where two companies compete directly, there is a greater likelihood that the use of similar marks will cause consumer confusion. The goods and services offered by Starbucks and Lundberg under their respective marks are clearly competitive, if not identical: specialty coffees and the stores that sell them. The public is more likely to believe that there is some association between Lundberg's shop and/or products and genuine Starbucks stores, coffee and/or products than it would be if the products were unrelated.

### c.  Starbucks and Sambucks sell through the same marketing channels.

### 83.

The likelihood of confusion increases when convergent marketing channels are used by the parties. *Sleekcraft*, 599 F.2d at 353. The evidence establishes that both Starbucks and Lundberg sell specialty coffee products through "stand alone" retail stores. The congruence of the marketing channels is the third Sleekcraft factor supporting Starbucks' claim that a likelihood of consumer confusion exists.

### d.  The Starbucks® Mark is extremely strong.

### 84.

"Strong" marks are "afforded the widest ambit of protection from infringing uses." *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1455 (9th Cir. 1991) (citations omitted).

///

85.

Starbucks is a strong trademark—particularly among coffee drinkers. Evidence supporting this conclusion includes the following: tens of millions of customers drink Starbucks® branded coffee, millions more buy Starbucks® branded beans in grocery stores, millions more see advertisements for Starbucks ® branded products or pass each day by one of the thousands of Starbucks® branded coffeehouses throughout the country; and the Starbucks® mark has been identified as one of the 100 most valuable brands in the world for the past four years.

Moreover, the strength of and the broader protection afforded to the Starbucks® mark is presumed for two independent reasons. The Starbucks® mark is a "fanciful" trademark: it is not descriptive, or even suggestive, of the services provided by Starbucks. As a fanciful mark, Starbucks® is entitled to greater protection under the Lanham Act. In addition, the Starbucks® mark is the subject of more than sixty trademark registrations issued by the Uni00ted States Patent and Trademark Office, which entitles it to a presumption of distinctiveness, thereby affording it the "utmost" protection under the *Lanham Act. Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). Accordingly, the overall strength of the Starbucks® mark is a strong indicator that favors a finding of likelihood of confusion.

### e. Lundberg knowingly adopted a mark similar to Starbucks®.

86.

While "intent" is not an element of a trademark infringement claim, evidence that the defendant intentionally adopted a mark similar to that of the plaintiff supports a finding that consumers are likely to be confused. *Official Airline Guides, Inc., v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) ("When an alleged infringer knowingly adopts a mark similar to another's, courts will

presan an intent to deceive the public."); *Sleekcraft*, 599 F.2d at 354 ("When the alleged infringer

knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can

accomplish his purpose: that is, that the public will be deceived.").  There is strong evidence here of

Lundberg's intent.  Lundberg admits that she was aware of Starbucks and had visited a Starbucks

retail location prior to changing the name of her store to "Sambuck's."

> **f.      Evidence of actual confusion is not necessary.**

87.

Actual confusion is not a required element of a trademark infringement claim.  Actual

confusion is not necessary to a finding of likelihood of confusion under the Lanham Act.

Therefore, this factor has no bearing on the current likelihood of confusion analysis.

> **g.      "Likelihood Of Expansion" has already occurred: the parties'
> goods compete directly in the same geographic region.**

88.

The "likelihood of expansion" factor generally considers the possibility that either

party will expand their business to compete with the other's business.  *Sleekcraft*, 599 F.2d at 354.

Here, it is undisputed that the parties already sell directly competitive products (specialty coffees

and coffee products).  In addition, the parties sell their products in the same small geographic

region.  There are currently over 200 Starbucks retail locations in Oregon, one of which is located

less than two miles from Lundberg's "Sambuck's Coffeehouse."  When the case commenced, there

were no Starbucks stores in Clatsop county.  In addition, Starbucks® products are sold in dedicated

retail stores, kiosks and grocery stores in Oregon.

///

///

89.

There is no restriction on Lundberg's ability to open additional Sambuck's Coffeehouse

locations and there is no restriction on her ability to license the mark to various competitors of

Starbucks, i.e., to further expand the use of the "Sambuck's" name, both geographically and in

product range.  As such, this factor also favors a finding of likely consumer confusion.

### h.      Consumers exercise low degree of consumer care for purchases of inexpensive products like coffee.

90.

Courts recognize that consumers devote limited attention when purchasing low

cost items and are thus "more vulnerable to the confusion, mistake, and misassociations against

which the trademark law protects."  *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 220 (2d Cir.

1999).  The coffee beverages sold by both parties in this action are low cost items, costing no more

than a few dollars.  This fact supports a finding that consumers exercise a low degree of care when

purchasing such coffee beverages.  *See Nabisco*, 191 F.3d at 220.  Thus, the eighth *Sleekcraft* factor

also favors a determination that consumer confusion is likely.

### I.      Lundberg's Use of the "Sambuck's" Name Violates Section 43(a) of the Lanham Act, Pursuant to 15 U.S.C. § 1125(a).

91.

Section 43(a) of the Lanham Act prohibits a defendant from using a mark that "is

likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association" of defendant or defendant's products with the plaintiff, or "as to the origin,

sponsorship, or approval of [defendant's] goods, services, or commercial activities by

[plaintiff]."  15 U.S.C. § 1125(a).

92.

The same standards and analysis that are applied to Starbucks' claim for infringement of its registered trademarks are applicable to its claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As established above, the evidence demonstrates that Starbucks owns various protectable trademarks and that Lundberg's use of the "Sambuck's" mark is likely to cause confusion, or to cause mistake, or to deceive an appreciable number of consumers as to the affiliation, connection or association of "Sambuck's" or its products with Starbucks.

93.

Starbucks' evidence also meets its burden of proving that Lundberg's use of the "Sambuck's" mark violates Section 43(a) of the Lanham Act.

**D.     Lundberg's Use of the "Sambuck's" Name Constitutes an Unlawful Trade Practice Under ORS 646.608.**

94.

Claims that arise under Oregon's unfair competition statute (ORS 646.608) for trademark infringement are analyzed using the same tests applied to trademark infringement claims that arise under the Lanham Act. Thus, the analysis set forth above establishing federal trademark infringement applies equally to the state unfair competition claim. Accordingly, Starbucks' evidence also meets its burden of proving that Lundberg's use of the "Sambuck's" mark violates Oregon's unfair competition statute pursuant to ORS 646.608.4[1]

///

///

---

[1] Lundberg claims that Starbucks has offered no evidence of actual loss caused by the use of the "Sambuck's" mark and thus cannot establish dilution under Oregon law. The court has previously rejected this assertion. In ruling on Lundberg's motion for summary judgment, the court explicitly held that: "If proved, such infringement could negatively affect sales or brand association by causing customers to be confused when making purchasing decisions. Such damages are sufficiently ascertainable to be cognizable under the OUTPA. O.R.S. § 646.638."

**F. Lundberg's Asserted Fair Use Defense Fails as a Matter of Law.**

95.

Lundberg has suggested that she has a "right" to use her "own name" as the name of her business. The source of this alleged right has never been clearly identified. Moreover, "Sam Buck" is not Mrs. Lundberg's name and has not been her name for more than a decade.

96.

Even if Lundberg had not abandoned the surname "Buck" more than a decade ago, the alleged similarity between her mark and her name is not a defense to trademark infringement. The Ninth Circuit has held that there is no right to use an individual's own name in business where the use confuses the public. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 (9th Cir. 1992).

**G. Starbucks is Entitled to a Permanent Injunction to Prohibit Lundberg From Further Use of the Name "Sambuck's" or Any Other Variation on Starbucks' Trademarks.**

97.

Permanent injunctive relief is proper where the plaintiff demonstrates: (1) success on the merits; and (2) the risk of irreparable harm. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 240, 253 (S.D.N.Y. 2004). Starbucks has established both elements.

98.

Starbucks has presented substantial unrebutted evidence that meets its burden of proving trademark dilution, trademark infringement and unfair competition. Furthermore, Starbucks' showing of likelihood of confusion establishes, as a matter of law, the second element of irreparable harm. *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir.

1993) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").  Moreover, each of the statutes under which Starbucks' claims arise explicitly provides for injunctive relief as a remedy for violations.  *See* 15 U.S.C. §§ 1114, 1125; ORS 646.638; ORS 647.107.


IT IS SO ORDERED.

Dated this 29th day of November 2005.



    /s/ Ancer L.Haggerty
_____

Ancer L. Haggerty
United States District Judge